UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                        Case No. 18-cr-20829
                                                  Hon. Matthew F. Leitman
v.

CHARLES EDWARDS,

    Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS (ECF #20)

On December 19, 2018, a federal grand jury charged Defendant Charles Edwards with being a felon in possession of a firearm, possession with intent to distribute heroin, and possession of a firearm in furtherance of a drug trafficking crime. (*See* Indictment, ECF #1.) The charges were based, in large part, upon evidence seized from Edwards' vehicle. Edwards has now filed a motion to suppress that evidence. (*See* Mot. to Suppress, ECF #20.) The Court held an evidentiary hearing on the motion on July 23, 2019. For the reasons explained below, the motion is **DENIED**.

## Findings of Fact

Based upon the testimony given and other evidence presented at the evidentiary hearing, the Court makes the following findings of fact:

1. On June 10, 2017, John Harwell and Noah Pillsbury were working as patrol officers for the City of Flint Police Department.

2. At that time, the City of Flint Police Department had written policies and procedures concerning impounding vehicles and conducting inventory searches of vehicles. Those policies and procedures were set forth in the Flint Police Manual, a portion of which was admitted into evidence as Government's Exhibit 2 at the evidentiary hearing.

3. As relevant to the issues presented in Edwards' motion, Section 03-4/020.3-1 of the Flint Police Manual ("Section 020.3-1") provided as follows on June 10, 2017:

**IMPOUNDMENT FOR SAFEKEEPING**

> Any time a vehicle is rendered unattended on public or private property not belonging to the vehicle owner or user as a result of Flint police action, and custody of the vehicle is not turned over by the person in charge of the vehicle to another who is legally eligible to take charge, the vehicle shall be impounded for safekeeping. An alternative to impoundment may be arranged if the unattended vehicle is protected form theft or damage while in the custody of the Flint Police Department. An alternative, to be acceptable, must transfer custody of the vehicle from the Department to the vehicle owner or his agent.

4. In addition, Section 03-4/020.4-1 of the Flint Police Manual ("Section 020.4-1") required officers impounding a vehicle to complete a "Vehicle Tie-Up Slip" and to include on that slip "an inventory of the contents of the car."

5. While Officers Harwell and Pillsbury were on routine patrol on June 10, 2017, they came across a vehicle accident scene. The accident involved a minivan driven by Edwards and a second vehicle driven by another individual.

6. Officers Harwell and Pillsbury stopped at the accident scene and spoke to the two drivers. The officers asked the drivers to provide their licenses, vehicle registrations, and proofs of insurance.

7. Edwards did not have a physical driver's license with him, so he gave the officers his name and birthdate.

8. The officers entered Edwards' information into the Law Enforcement Information Network system and discovered that Edwards was the subject of an outstanding arrest warrant issued by a Michigan state court.

9. Based upon the outstanding warrant, the officers arrested Edwards. Upon arresting Edwards, the officers handcuffed him and placed him into the rear seat of their police vehicle.

10. At the time the officers arrested Edwards, they did not believe or suspect that Edwards had committed any criminal conduct or that Edwards was in possession of any contraband. They arrested Edwards solely because of the outstanding warrant.

11. After the officers arrested Edwards, Officer Pillsbury assisted Edwards in making calls to family and/or friends. Edwards was calling these individuals –

with Officer Pillsbury's assistance – to ask them to come to scene to retrieve his vehicle and the property inside the vehicle.

12. The officers waited several minutes after Edwards made his initial calls. The officers then decided that instead of continuing to wait for someone to arrive at the scene, they would proceed to impound Edwards' vehicle. They made this decision because, among other reasons, they were uncertain that a licensed driver would timely arrive to take care of the vehicle, and they did not want to continue to wait at the scene. Members of Edwards' family did eventually arrive at the scene. But the officers made the decision to impound Edwards' vehicle before any family member arrived and could identify himself as a properly-licensed driver who had the ability to drive Edwards' vehicle from the scene.

13. The officers impounded Edwards' vehicle pursuant to Section 020.3-1. The officers' arrest of Edwards rendered his vehicle unattended and therefore subject to impoundment under that Section.

14. After the officers decided to impound Edwards' vehicle, Officer Harwell began to conduct an inventory search of the vehicle pursuant to Section 020.4-1. As part of that search, Officer Harwell searched a blue duffel bag. Officer Harwell discovered a mid-sized mini Draco firearm in the bag. As Officer Harwell continued to conduct the inventory search, he discovered a container containing what

he suspected to be heroin and a bag of suspected marijuana. Officer Pillsbury later discovered a second firearm in the vehicle.

15. The officers did not search Edwards' vehicle for the purpose of discovering evidence of a crime or contraband or because they suspected Edwards of committing a crime. Instead, their sole purpose was to conduct the vehicle inventory search required to be conducted when police action renders a vehicle unattended. During that search, the officers were looking for contraband, for items that could pose a danger to the officers or others, and for items of value.

16. After the officers seized the firearms and suspected drugs from Edwards' vehicle, they permitted members of Edwards' family – who had arrived on scene by that time – to remove valuable items from Edwards' vehicle. The family members removed television sets and tools from his vehicle. In addition, the officers allowed Edwards to give his family members some cash that he had in his possession.

17. After the officers completed their search of the vehicle, Officer Pillsbury completed the Tie-Up Slip required by Section 020.4-1. He also completed a second document known as a property receipt. The Tie-Up Slip was admitted as Government's Exhibit 6 at the evidentiary hearing, and the property receipt was admitted as Government's Exhibit 5. The property receipt identified the contraband seized from Edwards' vehicle. The Tie-Up Slip noted that some non-contraband

remained in Edwards' vehicle at the time of impound, but those items were not specifically identified on the slip. Instead, Officer Pillsbury identified that property as "Misc. papers/tools" on the slip.

18. At the end of the encounter, the officers had Edwards' vehicle towed from the scene.

## Analysis

Edwards contends that the search of his vehicle violated the Fourth Amendment to the United States Constitution. That Amendment protects "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV. "It is beyond dispute that a vehicle is an effect as that term is used in the [Fourth] Amendment." *United States v. Jones,* 565 U.S.400, 404 (2012) (internal quotation marks omitted).

In considering the validity of the warrantless search of Edwards' vehicle, the Court begins "with the basic rule that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant,* 556 U.S. 332, 338 (2009) (internal quotation marks omitted). "[I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine,* 479 U.S. 367, 371 (1987). "An inventory search is the search of property lawfully seized

and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *Whren v. United States,* 517 U.S. 806, 811 n. 1 (1996).

In *United States v. Hockenberry*, 730 F.3d 645 (6th Cir. 2013), the United States Court of Appeals for the Sixth Circuit offered the following comprehensive review of the law governing warrantless inventory searches:

> "A warrantless inventory search may only be conducted if police have lawfully tak[en] custody of a vehicle." *United States v. Smith,* 510 F.3d 641, 651 (6th Cir. 2007) (internal quotation marks omitted); *see also [United States v.] Jackson,* 682 F.3d [448,] 455 [6th Cir. 2012] ("It is settled law that the police may conduct an inventory search of an automobile that is being impounded without running afoul of the Fourth Amendment."). This Court has held that "[d]iscretion as to impoundment is permissible so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Jackson,* 682 F.3d at 454 (citations omitted) (internal quotation marks omitted); *see also United States v. Kimes,* 246 F.3d 800, 805 (6th Cir. 2001) ("The Fourth Amendment permits impoundment decisions ... that are objectively justifiable ... regardless of an officer's subjective intent."). Furthermore, an impoundment decision will not be impermissible simply because alternatives to impoundment might exist. *See Kimes,* 246 F.3d at 805 (holding that officer were not required to "take[ ] it upon themselves to call [the defendant's] wife and ask her to get the vehicle"); *cf. also United States v. Agofsky,* 20 F.3d 866, 873 (8th Cir.1994) ("Nothing in the Fourth Amendment requires a police department to allow an arrested person to arrange for another person to pick up his car to avoid impoundment and inventory.").

7

With regard to the actual performance of an inventory search, our Court has recently summarized:

> "In order to be deemed valid, an inventory search may not be undertaken for purposes of investigation, and it must be conducted according to standard police procedures." [*Smith,* 510 F.3d] at 651 (citation and internal quotation marks omitted). A general written inventory policy does not grant officers carte blanche when conducting a search; rather, it must be sufficiently tailored to only produce an inventory. [*United States v. Tackett,* 486 F.3d 230, 232 (6th Cir. 2007)]. Thus, "[i]n conducting an inventory search, officers do not enjoy their accustomed discretion; they simply follow the applicable policy." *Id.* "Nonetheless, officers may exercise some judgment based on concerns related to the purposes of an inventory search; for example, they may decide to open particular containers if they cannot determine the contents." *Id.* (citation and internal quotation marks omitted). "When a legitimate search is underway, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." [[*Colorado v.] Bertine,* 479 U.S. [367] 375 [1987], 107 S.Ct. 738] (citation and internal quotation marks omitted).

*Jackson,* 682 F.3d at 455.

> In other terms, officers are required to follow "standardized criteria ... or established routine" to assure that inventory searches are not "a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). At the same time, however, "there is no reason to insist that [inventory searches] be conducted in a totally mechanical 'all or nothing' fashion." *Id.* Additionally, when considering the comprehensiveness of an inventory list, "an officer's use of discretion in implementing agency guidelines regarding the conduct of an inventory search does not necessarily violate the Fourth Amendment." *Kimes,* 246 F.3d at 805. In *Kimes,* we specifically held that a standardized policy of "listing only 'valuable' items is not impermissible, and neither is a measure of flexibility regarding the implementation of that policy." *Id.* We further reasoned that "[t]he post-discovery listing of items discovered in a search, moreover, has no pertinent connection to the discovery itself." *Id.*
>
> Finally, we must consider whether the evidence establishes that the "police acted in bad faith or for the sole purpose of investigation" in conducting an inventory search. *United States v. Vite–Espinoza,* 342 F.3d 462, 470 (6th Cir. 2003) (citing *Bertine,* 479 U.S. at 372–73, 107 S.Ct. 738). Nevertheless, although inventory searches "may not be undertaken for the purposes of investigation, ... the mere fact that an officer suspects that contraband may be found in a vehicle does not invalidate an otherwise proper inventory search." *Smith,* 510 F.3d at 651 (citations omitted) (internal quotation marks omitted).

*Hockenberry*, 730 F.3d at 657-59.

The inventory search of Edwards' vehicle passes muster under these standards. First, the officers did not undertake the search for purposes of investigation, and the search was not a general rummaging intended to reveal

9

evidence of a crime or contraband. Instead, the officers conducted the search because their arrest of Edwards rendered his vehicle unattended and thus subject to impoundment and an inventory search under Sections 020.3-1 and 020.4-1. Second, the impoundment and subsequent search were conducted according to the Department's standard procedures, including Sections 020.3-1 and 020.4-1. The officers completed the paperwork required by the police department's policies, identified the contraband found in the vehicle, and had the vehicle towed from the scene. While it is true that the officers could have completed a more detailed inventory of the non-contraband remaining in the vehicle at the time of impoundment, this deviation from the police department's policies and procedures, standing alone, is not enough to invalidate the inventory search. *See id.*

Next, the officers acted in good faith during their encounter with Edwards and in connection with their decisions to impound the vehicle and conduct an inventory search. They worked with Edwards in an attempt to summon a third person to the scene to retrieve the car and avoid impoundment and an inventory search, and they made the decision to impound and search only after concluding that a suitable driver for the vehicle had not arrived, and would not necessarily arrive, in a timely fashion. Moreover, the officers worked with Edwards to permit his family members to retrieve valuable items from his vehicle and to transfer Edwards' cash to his family members. Simply put, these officers were not looking for a way to develop a case

against Edwards. Rather, they discovered contraband in Edwards' vehicle only as a result of conducting a standard inventory search pursuant to the general policies and procedures adopted and applied by the City of Flint Police Department. Thus, there is no basis on which to suppress the evidence seized by the officers.

Finally, Edwards has not cited any cases in which courts have suppressed evidence seized under similar circumstances. Edwards relies primarily upon the Sixth Circuit's decision in *United States v. Richards*, 56 F. App'x 667 (6th Cir. 2003), but that decision is distinguishable. In *Richards*, the Sixth Circuit affirmed the suppression of evidence seized by Flint police officers during an inventory search of a vehicle that the officers had purportedly decided to impound. The court held that the Government failed to show that the vehicle was impounded pursuant to a standardized policy and procedure. The court stressed that the vehicle was not rendered "unattended" and that even if it had been so rendered, that was not the result of police action. Thus, the court concluded that the impoundment of the vehicle was not authorized by Section 020.3-1. Here, in contrast and as noted above, Edwards' vehicle was rendered unattended by police action when the officers decided to arrest him based upon the outstanding warrant and when a suitable alternative driver had not appeared to drive the vehicle away before the officers decided to impound it. Therefore, unlike in *Richards*, the Government has shown here that Edwards' vehicle was impounded to the standardized policy set forth in Section 020.3-1.

In the end, the Court found the testimony of Officer Harwell – the only witness to testify at the evidentiary hearing – to be entirely credible[1], and, for all of the reasons stated above, the inventory search of Edwards' vehicle under the circumstances described by Officer Harwell satisfied the Fourth Amendment. Edwards' motion to suppress (ECF #20) is therefore **DENIED**.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: August 1, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 1, 2019, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764

---

[1] To defense counsel's credit, during the evidentiary hearing and the post-hearing argument, he highlighted some matters that could, perhaps, have called into question the version of events described by Officer Harwell. For instance, counsel pointed out the apparent inconsistency between (1) Officer Harwell's testimony that Edwards' vehicle was impounded because it was rendered unattended once the officers decided to arrest Edwards and (2) the notation on the Tie-Up Slip that the vehicle was impounded because the officers arrested Edwards for "narcotics" possession. The Court carefully observed Officer Harwell's demeanor at the hearing and considered his testimony in light of all of the other evidence, and the Court believes Harwell's testimony notwithstanding any possible conflicts between that testimony and other evidence presented at the hearing.